IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

HOWARD MARC WATZMAN,           *
                               *
        Plaintiff,             *
                               *        Civil No. TMD 14-3432
        v.                     *
                               *
                               *
CAROLYN W. COLVIN,             *
Acting Commissioner of Social Security,  *
                               *
        Defendant.             *
                        ************

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Plaintiff Howard Watzman seeks judicial review under 42 U.S.C. §§ 405(g) and

1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the

"Commissioner") denying his applications for disability insurance benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 18) and Defendant's

Motion for Summary Judgment (ECF No. 29).[1]  Plaintiff contends that the administrative record

does not contain substantial evidence to support the Commissioner's decision that he is not

disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion

for Summary Judgment (ECF No. 29) is **GRANTED**, Plaintiff's Motion for Summary Judgment

(ECF No. 18) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

# I

## Background

Plaintiff was born in 1966, has a college education, and previously worked as a medical consultant and physician.  R. at 29, 44-45, 49-50.  Plaintiff applied for DIB and SSI on October 28, 2010 (with a protective filing date of October 7, 2010), alleging disability beginning on December 1, 2005, due to, among other things, major depressive disorder, attention-deficit hyperactivity disorder, congenital heart disease, hypertension, seizure disorder, GERD, high cholesterol, reactive airway disease, and migraines.  R. at 135-50, 159, 170.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 64-83, 98-100.  On June 12, 2013, ALJ Larry Banks held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 40-63.  On July 23, 2013, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of December 1, 2005, through the date of the decision.  R. at 17-38.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on September 26, 2014.  R. at 1-6, 13-16.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On October 31, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

The Court reviews here and in Part VI below Plaintiff's relevant medical and vocational evidence.  After being convicted of a federal felony, but before his date to report to the Bureau of Prisons, Plaintiff attempted suicide on April 2, 2006.  R. at 381-469.  After his discharge from the hospital over two weeks later, he served his sentence, which ended on August 20, 2010.  R. at 46, 168.  After his release, Theodore Osuala, M.D., a psychiatrist, began treating Plaintiff on September 21, 2010. R. at 710-11; *see* R. at 713.  Dr. Osuala noted that Plaintiff felt "hopeless and worthless but no clear suicidal ideation.  He has no manic anxiety or psychotic symptoms." R. at 710.  Dr. Osuala noted that Plaintiff had seizures in prison.  R. at 710.  On mental status examination, Dr. Osuala noted that Plaintiff demonstrated good grooming and hygiene but that his mood was depressed and his affect was flat.  R. at 711.  Plaintiff's thought content had no homicidal or suicidal ideation.  R. at 711.  He experienced no auditory or visual hallucinations and no paranoid ideations.  R. at 711.  Plaintiff's cognition was fair, and his insight and judgment were good.  R. at 711.  Dr. Osuala's assessment thus was that Plaintiff demonstrated depressed mood, fair eye contact, slow speech with low volume, and flat affect, but he was not suicidal or homicidal.  R. at 711.  Dr. Osuala's diagnoses included major depressive disorder, cardiac valve disorder, and a GAF rating of 50. [2]

---

[2]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) [hereinafter *DSM-IV-TR*].  A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk,

On October 5, 2010, Dr. Osuala completed a "Medical Report Form 402B" (R. at 712-16), in which he stated that Plaintiff's symptoms included feeling sad every day, difficulty getting out of bed, poor appetite, poor energy and concentration, crying spells, and feeling helpless and worthless.  R. at 713.  Dr. Osuala assigned a GAF score of 50 and stated that Plaintiff had marked restriction in activities of daily living; marked difficulties in maintaining social functioning; frequent difficulties in maintaining concentration, persistence, or pace; and repeated (three or more) episodes of decompensation, each of extended duration.  R. at 715. Finally, Dr. Osuala stated that Plaintiff was prevented from working from October 5, 2010, to October 5, 2012, and that he remained "grossly depressed" despite several medications he was taking.  R. at 715-16.

On December 8, 2010, a state agency medical consultant, L. Robbins, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 739-46.  Dr. Robbins opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 740. Plaintiff frequently could stoop, kneel, crouch, and crawl.  R. at 741.  He occasionally could balance and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 741.  Although Plaintiff had no manipulative, visual, or communicative limitations, he was to avoid all exposure to hazards such as machinery and heights.  R. at 742-43.

On December 20, 2010, another state agency consultant, Frances Breslin, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listing 12.04 relating to affective disorders (R. at 751-64).

---

and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.   Dr. Breslin opined on a psychiatric review

technique form ("PRTF") that, under paragraph B of Listing 12.04, Plaintiff's mental

impairments caused him to experience (1) moderate restriction in activities of daily living;

(2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in

maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation

of extended duration.  R. at 761.  Dr. Breslin did not find evidence to establish the presence of

the criteria under paragraph C of Listing 12.04.  R. at 762.

> Dr. Breslin noted that Dr. Osuala's opinion
>
> is based on only 2 weeks of treatment as he first saw [Plaintiff] 9/21/10 and
> provided the [treating source opinion] 10/5/10.  [Medical evidence of record]
> indicates he has only seen Dr. Osuala twice and Dr. Osuala's [medical evidence
> of record] does not support the level of depression endorsed in the [treating source
> opinion].   As a result it does not meet the qualification of ongoing treatment
> relationships.   Additionally, Dr. Osuala's [medical evidence of record] does not
> support the level of depression endorsed in the [treating source opinion].
> [T]herefore, [t]he [treating source opinion] is noted, considered a [medical source
> opinion] and not [treating source opinion], and given some but not controlling
> weight.

R. at 763.  "[M]arked restrictions area not supported by [medical evidence of record] or

[activities of daily living]."  R. at 763.

Dr. Breslin thus assessed Plaintiff's mental RFC and opined that he was moderately

limited in his ability to (1) maintain attention and concentration for extended periods;

(2) perform activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances; (3) complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods; (4) interact appropriately with the general public; (5) accept

instructions and to respond appropriately to criticism from supervisors; and to (6) get along with

co-workers or peers without distracting them or exhibiting behavioral extremes.  R. at 747-48.

Plaintiff otherwise was not significantly limited.   R. at 747-48.   Dr. Breslin thus assessed

Plaintiff's functional capacity:

> [Understanding and memory and sustained concentration and persistence]:
> [Plaintiff] can understand, remember, and follow simple and detailed instructions.
> [Plaintiff] can attend to tasks for at least 2 hours.  [Plaintiff] can work a typical 8-
> hour work day.  Maintenance of an acceptable work schedule is not precluded by
> [Plaintiff's] psychiatric condition.
>
> [Social interaction]: There should be no intensive interaction with the public and
> only casual contact with peers.   [Plaintiff] can accept direct and non-
> confrontational correction.
>
> [Adaptation]: [Plaintiff] can adapt to typical work changes, avoid hazards, travel
> independently, and make future plans.

R. at 749.

On July 19, 2011, Dr. Osuala completed a "Routine Abstract Form-Mental" for the state

disability agency (R. at 707-09) in which he remarked that Plaintiff's mental status examination

was noteworthy for suicidal ideation, severely deficient social functioning (because Plaintiff was

isolated all the time), and moderately deficient concentration (because Plaintiff struggled with

serial sevens).  R. at 708.  Dr. Osuala assigned a GAF of 40.[3]  R. at 707.

On July 19, 2011, Robert Cohen, Ph.D., LCPC, Plaintiff's therapist, also completed a

"Routine Abstract Form-Mental" for the state disability agency (R. at 776-79) in which he stated

that Plaintiff's symptoms included social withdrawal, irritability, severe fatigue, inattention to

daily hygiene, difficulty getting out of bed, and social isolation.  R. at 777.  Dr. Cohen's mental

status examination noted tangential speech, depressed and irritable mood, flat affect, suicidal

ideations, thought persecutions about death, moderately deficient insight and judgment, severely

---

[3]  A GAF rating between 31 and 40 indicates "[s]ome impairment in reality testing or
communication (e.g., speech is at times illogical, obscure, or irrelevant)" or "major impairment
in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g.,
depressed man avoids friends, neglects family, and is unable to work; child frequently beats up
younger children, is defiant at home, and is failing at school)."  *DSM-IV-TR*, *supra* note 2, at 34.

deficient social functioning, and moderately deficient concentration.  R. at 778.  Dr. Cohen assigned a GAF of 37.  R. at 777.

On July 26, 2011, Dr. Cohen also provided additional comments to the state disability agency in which he stated that Plaintiff's symptoms included depressed mood most of the day, anhedonia, decreased appetite, problems sleeping, psychomotor retardation (problems getting out of bed in the morning), extreme fatigue and loss of energy, daily feelings of worthlessness, diminished ability to think and concentrate every day, and recurrent thoughts of death with suicidal ideation (with a serious suicide attempt in 2006).  R. at 780-81.  Dr. Cohen further stated that the Plaintiff presented as hopeless, helpless, and in emotional pain, with a severely depleted energy level.  R. at 781.  According to Dr. Cohen, Plaintiff's medications seemed to help him function minimally, he mentioned death frequently, and he often spoke of his lack of motivation to live.  R. at 781.

On August 22, 2011, another state agency consultant, Jeff Harlow, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listing 12.04.  R. at 783-96, 801-14.  Dr. Harlow opined on a PRTF that, under paragraph B of Listing 12.04, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  R. at 793, 811.  Dr. Harlow did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.04.  R. at 794, 812.  Dr. Harlow thus assessed Plaintiff's mental RFC and opined that he was moderately limited in his ability to (1) maintain attention and concentration for extended periods; (2) work in coordination with or proximity to others without being distracted by them; (3) complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and to respond appropriately to criticism from supervisors; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. at 797-98, 815-16. Plaintiff otherwise was not significantly limited. R. at 797-98, 815-16. In his assessment of Plaintiff's functional capacity, Dr. Harlow opined that Plaintiff "can perform repetitive work-related activities because these limitations are moderately limited or less." R. at 799, 817.

On July 17, 2012, Dr. Osuala completed interrogatories (R. at 971-81) on Plaintiff's behalf, giving a diagnosis of major depressive disorder, recurrent, severe, with psychotic symptoms. R. at 973. Symptoms included constant thoughts of suicide, paranoid thinking, and difficulty concentrating or thinking. R. at 975. Dr. Osuala further stated that Plaintiff's marked restriction in daily activities; moderate difficulties in maintaining social relationships; often experiencing problems with concentration or pace resulting in failure to complete tasks in a timely manner; and continual episodes of deterioration or decompensation, each of an extended duration, had existed at that severity since September 21, 2010, the date of his initial evaluation. R. at 976-79.

On July 17, 2012, Dr. Osuala also completed a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" (R. at 966-70), opining that Plaintiff's ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, and deal with work stresses was poor. R. at 968. Plaintiff's ability to use judgment, function independently, and maintain attention and concentration was fair. R. at 968. In support of this opinion, Dr. Osuala

8

noted "severe depression with poor concentration & isolative." R. at 968.  Dr. Osuala also opined

that Plaintiff's ability to understand, remember, and carry out complex and detailed instructions

was poor and that his ability to understand, remember, and carry out simple job instructions was

fair.  R. at 968.  In support of this opinion, Dr. Osuala noted "poor concentration due to

depression."  R. at 969.  Dr. Osuala finally opined that Plaintiff's ability to behave in an

emotional stable manner, relate predictably in social situations, and demonstrate reliability was

poor, but that his ability to maintain personal appearance was good.  R. at 969.  Dr. Osuala

further found that Plaintiff had severe anhedonia and no drive to do anything because of

depression.  R. at 969.  According to Dr. Osuala, all of Plaintiff's limitations had existed at that

severity since September 21, 2010.  R. at 970.

On May 27, 2013, Dr. Cohen wrote a letter summarizing and supporting Plaintiff's

condition, detailing Plaintiff's symptoms of depressed mood for most of the day on a daily basis,

with markedly diminished pleasure in daily activities, weight gain, insomnia, psychomotor

retardation and agitation, severe fatigue and loss of energy, feelings of worthlessness, diminished

ability to concentrate and make decisions, recurrent thoughts of death, daily problems getting out

of bed in morning, occasionally spending most of the day in bed, no meaningful social

interactions outside his family, and no friends.  R. at 1038.  Dr. Cohen reported that there had

been "minimal, if any, measurable progress regarding [Plaintiff's] treatment goals thus far."  R.

at 1039.  Dr. Cohen assigned a GAF "in the 36-41 range, based upon major impairments in

mood, social functioning, recurrent thoughts of death and thinking and not working (lack of a

job)." R. at 1039.

On May 27, 2013, Atlener Artis-Trower, M.D., Plaintiff's current treatment psychiatrist,

completed interrogatories (R. at 1251-61) on the Plaintiff's behalf, listing symptoms including

anhedonia, sleep disturbance, decreased energy, difficulty concentrating or thinking, feelings of guilt or worthlessness, and thoughts of suicide.  R. at 1254-55.  It was the doctor's opinion that Plaintiff had marked restriction in activities of daily living because of significantly decreased energy, no motivation to care for hygiene, and impaired sleep; marked difficulties in maintaining social relationships because he leaves home only when absolutely necessary; frequent deficiency in concentration or pace resulting in failure to complete tasks in a timely manner because he continued to exhibit trouble with focus and concentration on such tasks as reading and completing paperwork; and repeated (three or more) episodes of deterioration or decompensation, each of an extended duration.  R. at 1256-59.  Dr. Artis-Trower further stated that Plaintiff was chronically depressed, had daily thoughts of suicide, and deficits in self-care despite continued therapy and maximizing medication.  R. at 1260.

On May 27, 2013, Dr. Artis-Trower also provided a summary letter, stating that Plaintiff was diagnosed with major depression and attention-deficit hyperactivity disorder and that his severe depression and anxiety exacerbated his "already-marked loss of functionality."  R. at 1250.  Symptoms included a "pervasive loss of interest in normal activities," decreased appetite, sleep disturbance, psychomotor retardation, decreased energy, feelings of guilt and worthlessness, and "chronic recurrent thoughts of suicide and death."  R. at 1250.  Dr. Artis-Trower reiterated that Plaintiff's severe symptoms "have resulted in a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, and pace."  R. at 1250.  Dr. Artis-Trower further went on to state that, "[i]n my professional medical judgment, the severity of [Plaintiff's] Major Depressive Disorder seriously impairs his functional capabilities, and makes it extremely difficult for him to undertake normal everyday tasks."  R. at 1250.

10

At the hearing on June 12, 2013, the VE testified that a hypothetical person with Plaintiff's same age, education, work experience, and the RFC outlined in Part III below could perform the light, unskilled jobs of laundry worker, general office helper, or grading and sorting worker.[4]  R. at 58-59.  The VE's testimony was consistent with the *Dictionary of Occupational Titles*.[5]  R. at 60.  A person off task up to 20% of the workday could not perform these jobs.  R. at 60.  A person missing work at least two days per month would not be employable.  R. at 60.

### III

### Summary of ALJ's Decision

On July 23, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of December 1, 2005; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a laundry worker, general office helper, or

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* §§ 404.1568(a), 416.968(a).

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

grader/sorter.   R. at 22-30.   The ALJ thus found that he was not disabled from December 1, 2005, through the date of the decision.   R. at 30.

In so finding, the ALJ found that Plaintiff had the RFC

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no climbing of ladders, ropes, or scaffolds; no work around dangerous moving machinery or unprotected heights; work only requires understanding and remembering simple instructions and no complex tasks; and due to concentration and focus problems [Plaintiff] may be off task up to 5% of the workday.

R. at 25.

The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."   R. at 26.   The ALJ found that Plaintiff

has a good earnings history, bolstering his credibility when considering his willingness and desire to work [R. at 151-57].   However, [Plaintiff] was able to work in prison during most of the relevant period, with little difficulty.   Activities of daily living are suggestive of greater abilities than as alleged, such as ongoing caregiver services.   Physical problems have essentially received routine medication management, with cardiac findings generally stable, seizures being infrequent, and some alleged impairments receiving no meaningful treatment. Although [Plaintiff] consistently reports depression, beyond his single inpatient encounter, he only receives outpatient treatment.

R. at 26.   The ALJ further found that the evidence did not substantiate disabling cardiac impairments or seizures.   R. at 26-27.   The ALJ also found that the evidence did not substantiate disabling mental impairments that would render him unable to do simple work, as opposed to his past work as a practicing physician or medical consultant.   R. at 27.

In considering the opinion evidence, the ALJ found:

Even though [Plaintiff's] treatment providers are long time treating mental health specialists, the undersigned affords more weight to the opinions of the State

> agency psychological consultants.  [Plaintiff's] treatment providers['] opinions are overly drastic in light of [Plaintiff's] continued outpatient therapy for years and ongoing and consistent care giving services to his father.  Their opinions, many of which are stated to relate back to [Plaintiff's] onset date, do not explain how he was able to consistently perform simple work while in prison for years with similar symptoms and less frequent care.  Meanwhile, the State agency psychological consultant's [sic] opinions are better substantiated by [Plaintiff's] routine outpatient treatment and ongoing caregiving services for his father.  The undersigned affords more weight to the reconsideration level physician's opinions, as he was able to see more of the evidence of record, and his opinions are more consistent with [Plaintiff's] "paragraph B" criteria relating to social functioning, as discussed.

R. at 28.  The ALJ further found:

> The undersigned affords little weight to the opinions of the consultative examiners, as they are vague and subject to interpretation.  The undersigned affords more weight to the opinions of the State agency medical consultants.  Treatment providers of [Plaintiff] do not contradict their opinions.  They quantified limitations, and they were able to see much of the physical evidence of record, with new records not particularly noteworthy for declining physical abilities, significantly worsened diagnostic findings, or any invasive treatment.

R. at 28-29.

## IV

## <u>Disability Determinations and Burden of Proof</u>

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience.   20 C.F.R. §§ 404.1520(a)(4)(iii),

404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite

his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is

responsible for developing the claimant's "complete medical history, including arranging for a

consultative examination(s) if necessary, and making every reasonable effort to help [the

claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R.

§§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical

evidence and other evidence listed in the regulations. *See id.*   If a claimant retains the RFC to

perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is

other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).

The Commissioner must prove not only that the claimant's RFC will allow the claimant to make

an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.   *See   Walls*, 296 F.3d at 290; 20 C.F.R.  §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will

find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct

legal standards and whether the factual findings are supported by substantial evidence.  *See

Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is

not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the

relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not

conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or

substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he

duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ should have found that his mental impairments met Listing 12.04.  Pl.'s Mem. Supp. Mot. Summ. J. 3, ECF No. 18-1.  Alternatively, Plaintiff maintains that the ALJ should have determined that he could not engage in substantial gainful activity because of loss of productivity and absenteeism caused by the symptoms of severe depression.  *Id.*  As discussed below, Plaintiff's arguments are without merit.

**A.     Listing 12.04**

Plaintiff maintains that his mental impairments meet or equal Listing 12.04.  Pl.'s Mem. Supp. Mot. Summ. J. 3, ECF No. 18-1.  The ALJ found, however, that the criteria of paragraph B of Listing 12.04 were not satisfied because Plaintiff had mild limitations in activities of daily living; mild limitations in social functioning; moderate limitations regarding concentration, persistence, or pace; and one episode of decompensation of extended duration.  R. at 24-25.

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R.

§§ 404.1520a, 416.920a.  These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  If so, then the claimant will be found to be disabled.  If not, the reviewing authority will then assess the claimant's RFC.  *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas."  *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20

C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).  With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).  "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.  [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction."  *Id.*  Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."  *Id.* § 12.00(C)(2).  Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  *Id.* § 12.00(C)(3)*.*  "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100.  In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."  *Id.*  Finally, "[*e*]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  *Id.* § 12.00(C)(4).  "Episodes

of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Paragraph B of Listing 12.04, which relates to affective disorders, requires at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* § 12.04(B). "Marked" "means more than moderate but less than extreme." *Id.* § 12.00(C). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

Plaintiff contends that, in finding that his mental impairments did not meet or equal Listing 12.04, the ALJ did not give sufficient weight to the treating sources' opinions. Pl.'s Mem. Supp. Mot. Summ. J. 4-8, ECF No. 18-1. Plaintiff also maintains that the ALJ did not comply with the PRT for evaluating mental impairments outlined in 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* at 8-10. Plaintiff further asserts that the ALJ did not give sufficient weight to his credibility and subjective complaints and that the ALJ did not properly analyze the effects of his

psychiatric symptoms on his daily activities.  *Id.* at 12-13, 14-15.  Finally, Plaintiff contends that

the ALJ did not ask a proper hypothetical question to the VE because not all of his specific

limitations were set forth in a question to the VE.  *Id.* at 14.  For the reasons discussed below,

Plaintiff's assertions are unavailing.

**B.     ALJ's Determination of Plaintiff's Credibility**

The Court first turns to the ALJ's consideration of Plaintiff's credibility.  Pl.'s Mem.

Supp. Mot. Summ. J. 12-13, 14-15, ECF No. 18-1.  Plaintiff contends that the ALJ did not give

sufficient weight to his subjective complaints and did not properly analyze the effects of his

psychiatric symptoms on his daily activities.  *Id.* at 12, 14-15.

The Fourth Circuit reiterated the following standard in evaluating a claimant's complaints

of pain or other symptoms.  *Dunn v. Colvin*, 607 F. App'x 264, 272-73 (4th Cir. 2015).  Whether

"a person is disabled by pain or other symptoms is a two-step process.  First, there must be

objective medical evidence showing the existence of a medical impairment(s) which results from

anatomical, physiological, or psychological abnormalities and which could reasonably be

expected to produce the pain or other symptoms alleged."  *Id.* at 272 (quoting *Craig*, 76 F.3d at

594).  "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead

on establishing a determinable underlying impairment—a statutory requirement for entitlement

to benefits—which could reasonably be expected to be the cause of the disabling pain asserted

by the claimant."  *Id.* at 272-73 (quoting *Craig*, 76 F.3d at 594).  Second, after the first inquiry is

complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the

extent to which it affects her ability to work."    *Craig*, 76 F.3d at 595; *see* 20 C.F.R.

§§ 404.1529(c)(1), 416.929(c)(1).  "[T]his evaluation must take into account not only the

claimant's statements about her pain, but also 'all the available evidence,' including the

claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) . . . ."  *Craig*, 76 F.3d at 595 (citation omitted); *see* 20 C.F.R. §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2).  The ALJ must also take into account "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it."  *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* Social Security Ruling[7] ("SSR") 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

> Yet while "a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers."

*Stitely v. Colvin*, 621 F. App'x 148, 150 (4th Cir. 2015) (per curiam) (alteration in original) (quoting *Craig*, 76 F.3d at 595).

> [T]here must be . . . a medical impairment . . . which, when considered with all evidence . . . (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

Thus, in light of the foregoing, an ALJ may rely upon evidence of a claimant's daily activities to evaluate subjective complaints of pain, as "[t]he only fair manner to weigh a

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994); *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Here, the ALJ noted Plaintiff's activities included working while in prison, caring for his disabled father, and taking public transportation. R. at 24, 26, 46-47, 54. Plaintiff also indicated that he shopped once a week for an hour. R. at 205. A claimant's daily living activities such as caring for a family member can provide substantial evidence to discount the claimant's credibility regarding allegations of disabling symptoms. *See Ruiz v. Colvin*, __ F. App'x __, No. 13-17216, 2016 WL 158672, at *1 (9th Cir. Jan. 13, 2016) (claimant's daily activities, including caring for parents after alleged onset date of disability, were inconsistent with alleged symptoms); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (holding that ALJ did not err in discounting claimant's credibility because claimant's daily activities of caring for her child, performing housework, cooking, and driving were inconsistent with her complaints of disabling pain); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (caring for eleven-year-old child, driving, fixing simple meals, doing housework, and shopping for groceries held to be "extensive daily activities" that did not support claimant's alleged inability to work); *McAllister v. Astrue*, No. 4:11-CV-04078, 2012 WL 2803994, at *5 (W.D. Ark. July 10, 2012) ("The fact Plaintiff was able to care for her sick parents does indicate her impairments do not meet the requirements of [Listings 12.04, 12.06, and 12.08] . . . .").

The ALJ further noted that, while in prison, Plaintiff worked from 7:30 a.m. to 3:30 p.m. at a desk job performing paperwork. R. at 24, 46-47. Although the ALJ found that this work activity did not rise to the level of substantial gainful activity at step one (R. at 22), "[w]ork activity that is not both substantial and gainful is still 'evidence relevant to the severity of [the claimant's] impairment[s],' and as such must be considered in assessing the severity of a

claimant's symptoms." *Sherman v. Colvin*, No. 4:13-CV-00020, 2014 WL 3344899, at \*9 (W.D. Va. July 8, 2014) (alteration in original) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)); *see Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (part-time work may demonstrate ability to perform substantial gainful employment (citing *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992)); *Patton v. Astrue*, No. 1:10CV211, 2011 WL 6300361, at \*5 (W.D.N.C. Dec. 16, 2011) (claimant's work and activities while in prison, among other things, provided substantial evidence to support ALJ's adverse credibility finding).

Finally, activities of daily living such as using public transportation can provide substantial evidence to diminish a claimant's credibility regarding his subjective complaints. *See Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014); *Childers v. Soc. Sec. Admin., Comm'r*, 521 F. App'x 809, 814 (11th Cir. 2013) (per curiam) ("[The claimant] could also shop, travel, ambulate, prepare meals, utilize public transportation, and sort, handle, and use papers and files. These capabilities are inconsistent with pain so debilitating as to prevent one from working." (citation omitted)).  In short, contrary to Plaintiff's contention, his prison work, caregiving, and use of public transportation provided substantial evidence for the ALJ to discount his credibility regarding his allegations of disabling symptoms.  *See Johnson*, 434 F.3d at 658; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day).

Plaintiff further maintains that the ALJ failed to consider the credibility factors under SSR 96-7p.  Pl.'s Mem. Supp. Mot. Summ. J. 15, ECF No. 18-1.  In *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999), the plaintiff argued that "the ALJ failed to give a legitimate reason for disregarding the [plaintiff's] allegations, failed to take into consideration the factors

listed in Social Security Ruling 96-7p, and did not set forth the weight he attributed to the evidence which influenced his credibility determination." This Court in *Ketcher* noted, however, that SSR 96-7p requires an ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about that symptoms and how they affect the individual, and any other relevant evidence in the case record." *Ketcher*, 68 F. Supp. 2d at 652. This Court in *Ketcher* ultimately found that the ALJ in that case considered the entire record and addressed the objective evidence as well as the plaintiff's subjective complaints. *Id.*

Here, before concluding that Plaintiff's subjective complaints and alleged limitations were not fully credible, the ALJ considered Plaintiff's activities of daily living (R. at 24), the various opinions (R. at 28-29), and the evidence of record (R. at 26-28). The Court thus finds that the ALJ complied with SSR 96-7p. *See Ketcher*, 68 F. Supp. 2d at 652; *see also Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (per curiam) ("In citing to [20 C.F.R.] § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard."). Plaintiff's assertion to the contrary and reliance on *Totten v. Califano*, 624 F.2d 10 (4th Cir. 1980), thus are unavailing. *See Valley v. Astrue*, No. 3:11-CV-260-HEH, 2012 WL 3257861, at *15 (E.D. Va. June 22, 2012) ("While *Totten* does support the notion that a claimant does not have to be bedridden or totally helpless to qualify for disability, it also included undisputed facts of the claimant's long periods of incapacitation as a result of her medical impairments. *See Totten*, 624 F.2d at 12 ('The ALJ must consider this question and make specific findings on whether Totten's intermittent incapacity constitutes an inability to perform any substantial gainful activity.')."),

25

*report and recommendation adopted*, No. 3:11CV260-HEH, 2012 WL 3257876 (E.D. Va. Aug. 8, 2012).

**C.     ALJ's Consideration of Opinion Evidence**

Plaintiff contends that the ALJ erred in his consideration of the opinion evidence.  In this regard, the Fourth Circuit in *Dunn* also reiterated the following standard for considering medical opinions.  *Dunn*, 607 F. App'x at 267-68.  When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. §§ 404.1527, 416.927.  "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn*, 607 F. App'x at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Dunn*, 607 F. App'x at 267.  Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."

*Craig*, 76 F.3d at 590; *see Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) ("[A] treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c))).  Moreover, "the testimony of a non-examining physician can be relied upon when it is consistent with the record.  Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand."  *Smith*, 795 F.2d at 346 (citation omitted).  An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so.  *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone.  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given.  *See id.* §§ 404.1527(c)(3), 416.927(c)(3).  Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it.  *See id.* §§ 404.1527(c)(4), 416.927(c)(4); *see also Dunn*, 607 F. App'x at 268.

Here, the ALJ found that the opinions of Plaintiff's treating sources were inconsistent with substantial evidence in the record of his prison work history, his care of his father, and the nature of his outpatient treatment.  R. at 28.  While Plaintiff points to his declining GAF ratings by his treating sources after his release from prison, Plaintiff's GAF ratings were between 51 to 70 (indicating mild to moderate symptoms, *see DSM-IV-TR*, *supra* note 2, at 34), he denied any

suicidal or homicidal ideation, and his grooming and hygiene were appropriate while in prison. R. at 624, 638, 667, 668.   In 2008, because of side effects, Plaintiff refused recommended treatment for his depression (R. at 599, 603), but he also reported that he was functional with his depression (R. at 609).   He walked one mile daily without difficulty.   R. at 603.   Under SSR 96-2p, "a finding that a physician's opinion is inconsistent with the other substantial evidence in a claimant's case record is adequate to support a determination that the opinion is not entitled to controlling weight."   *Burger v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1345, 2015 WL 467662, at *3 n.2 (D. Md. Feb. 2, 2015) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).   Thus, despite the opinions of Plaintiff's treating sources about his marked limitations and repeated episodes of decompensation after his release from prison, substantial evidence supports the ALJ's affording these opinions less than controlling weight.

Finally, Plaintiff points out that an ALJ must consider the factors cited in *Johnson* and in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when not affording a treating source's opinion controlling weight.   Pl.'s Mem. Supp. Mot. Summ. J. 11, ECF No. 18-1.   In this case, however, "[w]hile the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ was clear that he concluded that the [treating sources' opinions were] not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*" to afford a treating physician's opinion less than controlling weight.   *Bishop*, 583 F. App'x at 67.

**D.     ALJ's Application of PRT**

Plaintiff also contends that the ALJ failed to follow the PRT outlined in 20 C.F.R. §§ 404.1520a and 416.920a for evaluating mental impairments at steps two and three of the sequential evaluation process.   Pl.'s Mem. Supp. Mot. Summ. J. 8-10, ECF No. 18-1.   In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and

416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  These regulations require application of the PRT at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  If so, then the claimant will be found to be disabled.  If not, the reviewing authority will then assess the claimant's RFC.  *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

When a claimant has presented a colorable claim of mental impairment, the ALJ is required "to complete a PRTF and append it to the decision, or incorporate its mode of analysis

into his findings and conclusions.  Failure to do so requires remand." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (per curiam)); *see* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).  *But see Pepper v. Colvin*, 712 F.3d 351, 365-67 (7th Cir. 2013) (under some circumstances, failure to use explicitly special technique may be harmless error); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (holding that "the special technique of § 404.1520a does not confer such an 'important procedural safeguard' upon claimants that an ALJ's failure to rate the B criteria will rarely be harmless").  "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).  "In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a 'narrative rationale,' instead of the 'checklist of . . . conclusions' found in a PRTF." *Keyser*, 648 F.3d at 725 (alteration in original).

Plaintiff maintains that remand is warranted because the ALJ did not follow the steps outlined above.  Pl.'s Mem. Supp. Mot. Summ. J. 8-10, ECF No. 18-1.  As the Commissioner points out, however, the ALJ discussed the evidence in support of his findings and the basis for those findings according to the PRT (R. at 24-25).  Thus, Plaintiff's contention that the ALJ failed to comply with 20 C.F.R. §§ 404.1520a and 416.920a is without merit.

## E.    ALJ's Hypothetical Questions to VE

Plaintiff finally asserts that the ALJ failed to include all of his specific limitations in his hypothetical questions to the VE.  Pl.'s Mem. Supp. Mot. Summ. J. 14, ECF No. 18-1.  The hypothetical questions presented to the VE need only include limitations supported by the record,

however.  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that ALJ's hypothetical question need only include those impairments supported by record); *see also Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (per curiam) (hypothetical question is unimpeachable if it adequately reflects RFC for which ALJ had sufficient evidence (citing *Johnson*, 434 F.3d at 659)); *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (holding that ALJ is not required to credit VE testimony elicited in response to hypothetical question that includes limitations that ALJ finds not to be credible).  As the Commissioner points out, Plaintiff does not argue that the hypothetical questions did not accurately include all the limitations assessed by the ALJ in the RFC assessment.  For the reasons discussed above, substantial evidence supports the ALJ's consideration of Plaintiff's credibility and weight given to the various opinions when determining Plaintiff's RFC.  Plaintiff's assertion regarding incomplete hypothetical questions by the ALJ to the VE thus is without merit.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here.  Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 29) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**.  The Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.

Date: March 23, 2016                          _____/s/_____

                                              Thomas M. DiGirolamo
                                              United States Magistrate Judge